Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3354 | **DATE** | 8/30/2001 |
| **CASE TITLE** | WFS Financial vs. South Chgo Dodge, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 10/25/2001 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We grant Defendant's motion (Doc 11-1) to dismiss Counts II, III and IV of the Amended Complaint. Answer to Count I to be filed within 14 days. Fact discovery to be completed by October 25, 2001.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 3 1 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 19 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | AUG 30 PM 4:17 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | | |
|---|---|---|
| WFS FINANCIAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | AUG 3 1 2001 |
| vs. | ) | 01 C 3354 |
| | ) | |
| SOUTH CHICAGO DODGE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before the Court is Defendant's Motion to Dismiss Counts II, III and IV of Plaintiff's Amended Complaint. For the following reasons, we grant the motion.

### BACKGROUND

As a preliminary matter, we address Defendant's contention that we may not properly incorporate Plaintiff's RICO statement into the Amended Complaint. That contention is wrong. When considering a motion to dismiss pertaining to a civil RICO claim, the district court may properly examine both the original complaint and the RICO statement. See McLaughlin v. Anderson, 962 F.2d 187, 189 (2d Cir. 1992). Courts across the country routinely incorporate the RICO statement into their analysis of whether to dismiss RICO claims. See Topalian v. Ehrman, 954 F.2d 1125, 1136

19

n.28 (5th Cir. 1992); Dempsey v. Sanders, 132 F. Supp. 2d 222, 224 (S.D.N.Y. 2001); Allen v. New World Coffee, Inc., No. 00 C 2610, 2001 WL 293683, at *1 (S.D.N.Y. Mar. 27, 2001); Dale v. Frankel, 131 F. Supp. 2d 852, 859 (S.D. Miss. 2001); Molloy v. Primus Automotive Fin. Servs., 808 n.2 (C.D. Cal. 2000); Office Outfitters, Inc. v. A.B. Dick Co., Inc., 83 F. Supp. 2d 772, 778 (E.D. Tex. 2000). Accordingly, in the case at bar we accept as true, as we are obligated to do, all well-pleaded allegations in the Amended Complaint and the RICO statement. Plaintiff WFS Financial, Inc. is a corporate lender located in California. (Amd. Compl. ¶ 1.) On or about February 4, 1998, Plaintiff executed a "Dealer Agreement" with Defendant South Chicago Dodge, Inc. providing *inter alia* that from time to time Defendant may sell, transfer and assign chattel paper including purchase money security agreements and retail installment contracts relating to Defendant's sale of automobiles to its customers. (Id. ¶¶ 6, 8.) From that time through March 2000, Plaintiff purchased and took assignment of Defendant's rights, title and interest in not less than 342 of Defendant's purchase money security interests and/or retail installment contracts with its customers (hereinafter the "Purchased Contracts"). (Id. ¶ 9.) According to Plaintiff, Defendant breached the Dealer Agreement by entering no less than 189 Purchased Contracts that violated the many warranties contained in the Dealer Agreement. (Id. ¶ 15.)

Plaintiff also alleges that Defendant engaged in racketeering activities in violation of 18 U.S.C. §§ 1962(a) and (b). (Id. ¶ 20; Pl.'s RICO Stmt. ¶ 1.) The predicate acts of the violation, according to Plaintiff, are Defendant's violations of federal mail and wire fraud statutes. (Pl.'s RICO Stmt. ¶ 5(a).) Through the mail and wires, Defendant allegedly

> misrepresented the true nature of at least 189 of those [Purchased Contracts] in a variety of ways including: the knowing submission of misleading, false and/or altered supporting documentation to Plaintiff for its use in the credit-approval process; the knowing submission of false customer-employment documentation to Plaintiff either independently or in collusion with its customers; the knowing submission of forged credit applications and/or purchase contracts[;] and the misrepresentation of the goods and/or services actually financed by customers.

(Id. ¶ 5(b).) According to Plaintiff, these predicate acts occurred from February 1998 through March 2000. (Id. ¶ 5(b).)

The RICO statement asks plaintiffs to identify the time, place and contents of the alleged misrepresentations as well as the persons to whom and by whom they were made. (Id. ¶ 5(b), (c).) Plaintiffs submit the following allegations:

- Kimberly Polk, Contract # 594-5088, Date of Purchase / Assignment to Plaintiff 9/25/99: Defendant allegedly told Polk that she had purchased "GAP insurance." Plaintiff was unaware of this statement, and Polk's purchase contract did not include GAP insurance. When Polk later suffered a casualty loss of her vehicle in early 2000, she learned no GAP insurance was in place. Polk refused to pay Plaintiff the shortfall between the casualty loss value paid by her collision insurer and the payoff on her purchase

contract. The amount of the shortfall exceeded $6,000. Her account with Plaintiff went into default. Defendant, however, tendered a check payable to Plaintiff in the amount of $1,500 denoted "GAP," followed by another check in the amount of $4,700.

- Victor Williams, Contract # 594-4281, Date of Purchase / Assignment to Plaintiff 7/17/99: Williams experienced a series of mechanical problems with the automobile he purchased from Defendant. Williams attempted to correct these problems pursuant to his service agreement with Defendant which Plaintiff had financed. The problems were never resolved to his satisfaction, however. After a series of confrontations with Defendant's personnel, Williams took his vehicle to another dealer for repair, whereupon it was discovered that the vehicle's VIN number did not match the VIN on Plaintiff's documentation. Upon advice of counsel, Williams ceased paying Plaintiff and returned the vehicle to Defendant without satisfying his obligations to Plaintiff.

- Marguerite Gonzales, Contract # 594-3978, Date of Purchase / Assignment to Plaintiff 8/24/99: The "Dealer Invoice" Defendant represented to Plaintiff to be the invoice issued to it by Daimler-Chrysler is altered and/or false. The signature styles on Nunn's purported Credit Application and purchase contract are not only different, but different names appear as well. Plaintiff believes Nunn was never an employee of the Chicago Public Schools, as represented in her Credit Application, and that her income was materially overstated.

- Jamie Cross, Contract #594-4842, Date of Purchase / Assignment to Plaintiff 9/3/99: Altered and/or false Dealer Invoice.

- Vera Weston, Contract #594-5089, Date of Purchase / Assignment to Plaintiff 9/25/99: The signature on the Credit Application differs from the signature on the Purchase Contract. In addition, the Dealer Invoice is altered and/or false. Furthermore, Plaintiff

> believes Weston's income on the Credit Application is materially overstated.
>
> - Bernice & Angela Russell, Contract # 594-4773, Date of Purchase and Assignment to Plaintiff 8/21/99: Not only are the signature styles different on the Credit Application and Purchase Contract; moreover, a different initial appears on one of the signatures.

(Id. ¶ 5(b)(i)-(vii).) According to Plaintiff, these allegations comprise a scheme to defraud. (Amd. Compl. ¶ 22.) The Defendant constitutes an enterprise that implemented the scheme. (Id.)

Count III of the Amended Complaint asserts fraud in the inducement. According to Plaintiff, Defendant knew or should have known that the Purchased Contracts were executed under deliberately misleading and false circumstances based upon material misrepresentations of the underlying facts. These misrepresentations were intended to induce Plaintiff to finance Defendant's customers. Plaintiff reasonably relied on the misrepresentations. As a direct and proximate result of the misrepresentations, Plaintiff has been injured in an amount no less than $4,459,014. Similarly, Count IV invokes Illinois' Consumer Fraud and Deceptive Trade Practices Act. In this Count, Plaintiff alleges that Defendant's misleading acts and practices were intended to induce Plaintiff to finance the Purchased Contracts and resulted in substantial injury to Plaintiff in excess of $4,459,014.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests whether the plaintiff has properly stated a claim for which relief may be granted. See Pickrel v. City of Springfield, Ill., 45 F.3d 1115, 1118 (7th Cir. 1995). The court must accept as true all of the plaintiff's well-pleaded factual allegations as well as all reasonable inferences. See Coates v. Illinois State Bd. of Ed., 559 F.2d 445, 447 (7th Cir. 1977). However, the court need "not strain to find inferences favorable to the plaintiffs" which are not apparent on the face of the complaint. Id. The court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984)).

Rule 9(b) of the Federal Rules of Civil Procedure states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The rule requires plaintiffs to allege the "identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Vicom, Inc. v. Harbridge Merchant Svcs., Inc., 20 F.3d 771, 777 (7th Cir. 1994) (quoting Bankers Trust Co. v. Old World Republic Ins. Co., 959 F.2d 677,

683 (7th Cir. 1992)). In other words, pleading with particularity means stating "the who, what, when, where, and how: the first paragraph of any news story." DiLeo, 901 F.2d 624, 627 (7th Cir. 1990).

DISCUSSION

Defendant maintains that Plaintiff has failed to craft Counts II, III and IV with the particularity required by Rule 9(b). We agree. Plaintiff's efforts to plead with particularity fail both in number and in substance. For that reason, we must dismiss the three counts.

Count II of the Amended Complaint relies on bald assertions that, taken together, identify the elements of a civil RICO violation without any embellishment. Our consultation of the RICO Statement proved unenlightening, as there we found few instances of greater particularization. In fact, the only attempts to plead with particularity that we found occurred in paragraphs 2 and 5(c). In paragraph 2, Plaintiff's description of Defendant's misconduct rests on naked assertions with no factual elaboration. The assertion that Defendant knowingly submitted "misleading, false and/or altered supporting documentation" for use in the credit-approval process, as well as forged credit applications and misrepresentations of the services actually financed, is utterly devoid of any particularity. It leaves us with no clear notion of what Defendants did that could constitute fraud. Far from informing us of the "who, what,

when, where and why" of the complaint, these assertions leave us with a generalized, incomplete idea of the dimensions of the claim.

The same goes for the information furnished in paragraph 5(c). While Plaintiff offers the lengthiest answer in this paragraph, the answer exhibits numerous deficiencies. Although Plaintiff provides the names of seven customers, their contract numbers and the date of purchases and assignments, Plaintiff falters in its descriptions of the frauds that occurred in each anecdote. In general, Plaintiff has failed ever to mention any individual acting on behalf of Defendant. It is a well-settled legal principle that corporations are not actors; human beings are. Plaintiff must pinpoint which actors on behalf of Defendant engaged in the allegedly proscripted behavior. Not once has Plaintiff pointed to such an individual. Furthermore, Plaintiff fails to identify specific dates on which certain conduct occurred. For instance, we know only that Customer Polk suffered a casualty loss of her vehicle "in early 2000." We know nothing at all about when Customer Williams experienced problems with his vehicle. These dates must be alleged with a reasonable degree of particularity. Plaintiff falls far short.

Furthermore, these anecdotes paint an incomplete picture of the alleged fraudulent scheme. With respect to Customers Nunn, Cross and Weston, for instance, Plaintiffs cannot stand on the blanket assertion that the Dealer Invoices were "altered and/or false." Instead, the Amended Complaint must explain the nature of the alleged

alteration and/or falsehood. Furthermore, the Amended Complaint fails to attribute the alteration and/or falsehood to the Defendant at all, much less through particularized allegations. The same goes for the allegations pertaining to Customers Weston, Nunn and Gonzales about material overstatement of income. The Amended Complaint does not articulate any theory as to how and why these overstatements occurred. Nor does it explain how the wires and mail were used to implement the scheme or pinpoint who at the company was responsible for the alleged misstatements and falsehoods. It is not for us to draw inferences where allegations of fraud are at play. Rather, it is the job of the Plaintiff to aver with particularity the circumstances surrounding the allegations.

In defense of its spartan allegations, Plaintiff contends that the facts forming the basis of its claims are "peculiarly within Defendant's employees' and officers' knowledge." In support of this contention, Plaintiff cites Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987) (superseded by statute) (implied overruling recognized by Howard v. Everex Sys., Inc., 228 F.3d 1057 (9th Cir. 2000)). This authority is unpersuasive for several reasons. In the first place, Plaintiff omitted an important part of that case's rule. Although the Wool Court stated that the requirement of pleading with particularity may be relaxed where plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing, the Court goes on to say that the plaintiff can satisfy the particularity requirement by submitting along

with the Complaint a statement of the facts upon which the belief is founded. See id. at 1439. Plaintiff neglected to mention in its brief the latter part of this rule, and we note that Plaintiff submitted no such statement of fact along with its brief. Furthermore, the case is of dubious application to the instant matter as it addresses the issue of pleading fraud in the context of securities cases, an issue expressly governed by statute.

In the case at bar, Plaintiff fails here as elsewhere to elaborate on the nature of the information allegedly held within Defendant's peculiar knowledge. Even if Plaintiff elaborated on this contention, it cannot trump the pleading requirements imposed by Rule 9(b). In most litigation, there are facts that remain peculiarly within the knowledge of the Defendant. However, because of the importance of protecting a defendant's reputation from harm and minimizing "fishing expeditions," Plaintiffs who allege fraud must do so with particularity regardless of the difficulty of ascertaining facts uniquely within Defendant's knowledge. See Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 777 (7th Cir. 1994).

Counts III and IV fare no better. Rule 9(b)'s pleading requirements apply to these claims, see Fed. R. Civ. P. 9(b) (stating that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"); Gallagher Corp. v. Massachusetts Mut. Life Ins. Co., 940 F. Supp. 176, 180 (N.D. Ill. 1996) (dismissing consumer fraud claim under Rule 9(b)), and here again

Plaintiff's effort falls short of the rule's requirements. Like Count II, Counts III and IV do not contain particularized allegations of the circumstances constituting fraud and therefore must be dismissed.

## CONCLUSION

For the foregoing reasons, we grant Defendant's Motion to Dismiss Counts II, III and IV of the Amended Complaint.

Charles P. Kocoras
United States District Judge

Dated: _____August 30, 2001_____